# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| RAYSHAWN WILLIAMS,<br><br>                Plaintiff,<br><br>v.<br><br>STATE FARM FEDERAL CREDIT UNION; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; AND TRANS UNION LLC,<br><br>                Defendants. | Case No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC §1681** *et seq.* |

    Plaintiff RayShawn Williams ("Plaintiff"), through Plaintiff's attorneys, alleges the following against Defendants State Farm Federal Credit Union ("State Farm"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union"):

## INTRODUCTION

    1.    Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian, Equifax, and Trans Union, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

    2.    Plaintiff's Complaint also alleges violations of the FCRA, against Defendant State Farm for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Experian, Equifax, and Trans Union.

1

## JURISDICTION AND VENUE

3. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Defendants transact business here; as such, personal jurisdiction is established.

## PARTIES

6. Plaintiff is a natural person residing in the city of Brookhaven in Dekalb County, Georgia.

7. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

8. Defendant SFCU is a financial institution engaged in the business of giving credit and collecting debt. SFCU is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, SFCU is regularly engaged in the business of furnishing credit information to the credit reporting agencies. SFCU is headquartered at 1 State Farm Plaza SA-1, Bloomington, IL 61710. SFCU can be served through their registered agent, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

9. Defendant Experian is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the

business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is and can be served at 475 Anton Boulevard, Costa Mesa, California 92626.

10. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its registered agent Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

11. Defendant Trans Union is a credit reporting agency, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent Prentice Hall Corporation 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

12. Upon information and belief, Defendants Experian, Equifax, and Trans Union (referenced together as "credit reporting agencies" or "CRAs") disburse *consumer reports* to third parties under contract for monetary compensation.

13. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14. Any violation by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

15. Defendant CRAs report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

16. Defendants CRAs credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendant CRAs gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and

4

information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

18. The information reported by Defendant CRAs contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

19. The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

20. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

21. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

22. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

23. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

24. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

25. Upon information and belief, a consumer who has reaffirmed a debt during the bankruptcy process but has a credit report that is inaccurately reporting that reaffirmed debt as discharged in bankruptcy, suffers greater harm than someone whose debt is accurately reporting their positive payment history on a reaffirmed account.

26. Defendant CRAs obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as individuals account tradelines.

27. Defendant CRAs are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

28. Defendant CRAs are also aware of the effect of a reaffirmation of debt, which excludes the debt from the bankruptcy discharge and the consumer remains liable for the debt and continued payments on the debt.

29. Additionally, information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources from which Defendant CRAs voluntarily obtained the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

30. Rather than following reasonable procedures to assure maximum possible accuracy, Defendant CRAs inaccurately report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by

6

Defendants, information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendant has obtained through its independent efforts, or could easily obtain through the same reasonably available public records.

31. Defendant CRAs are on continued notice of its inadequate post-bankruptcy reporting procedures, including pertaining to account and payment statuses, and reaffirmed debts through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

32. In or around January 2017, Plaintiff obtained an auto loan (account no. 3128095****) ("the Account") from State Farm Federal Credit Union ("SFCU").

33. On or about November 7, 2019, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, petition number 19-67993.

34. On or about January 10, 2020, Plaintiff reaffirmed his obligations under the Account, whereby Plaintiff remained personally liable/responsible for continued payment on the Account. The Account was therefore not included in Plaintiff's bankruptcy discharge.

35. Plaintiff received a discharge in bankruptcy court on or about February 27, 2020.

36. Plaintiff filed for bankruptcy and reaffirmed the Account to rebuild and improve his credit.

37. After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start."

38. Upon information and belief, following Plaintiff's bankruptcy discharge, Defendants published inaccurate information to creditors who relied upon that inaccurate information in determining whether to extend credit to Plaintiff and on what terms.

39. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained his Experian, Equifax, and Trans Union consumer credit reports to ensure that his credit account tradelines and bankruptcy were being reported accurately.

40. Plaintiff learned that Defendant CRAs were inaccurately reporting Plaintiff's reaffirmed Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the account was discharged or non-current/non-paid even though Plaintiff continued to make ongoing payments on the Account.

41. Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation and the Account (debt) was indisputably not discharged. Plaintiff did this to maintain some of his credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

42. However, when Plaintiff pulled his credit reports, Plaintiff discovered that Defendants CRAs were not reporting the Account's accurate payment history despite reaffirmation of the debt.

43. The CRAs' reporting was therefore patently false and materially misleading as the Account was reaffirmed and not discharged by Plaintiff's bankruptcy and Plaintiff continued to make timely monthly payments on the Account.

44. On or about July 17, 2020, Plaintiff sent letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Account.

45. The letters specifically advised that Plaintiff did not include the Account in his bankruptcy, remained personally obligated for the Account, and continued to make regular payments on the Account.

46. Plaintiff's dispute letter was delivered to Equifax on July 20, 2020.

47. Plaintiff's dispute letter was delivered to Experian on July 22, 2020.

48. Plaintiff's dispute letter was delivered to Trans Union on July 22, 2020.

49. Upon information and belief, Experian and Trans Union forwarded Plaintiff's dispute to SFCU within 5 business days of receipt.

50. Upon information and belief, Equifax failed to forward Plaintiff's dispute to SFCU within 5 business days of receipt.

51. On or about August 5, 2020, Experian responded to Plaintiff's dispute letter. Experian's response indicated that it had completed an investigation and updated the SFCU tradeline to indicate that the Account was open with a balance – not discharged – in Plaintiff's bankruptcy.

52. Despite Experian's response to Plaintiff's dispute, including its assurance that the Account was reporting accurately, Experian continued to report the Account as having been included in Plaintiff's bankruptcy.

53. Upon information and belief, Equifax neither responded to Plaintiff's dispute letter, nor conducted any investigation whatsoever.

54. Equifax continues to inaccurately report the Account as closed and "INCLUDED_IN_BANKRUPTCY."

55. On or about August 6, 2020, Trans Union responded to Plaintiff's dispute letter. Trans Union's response indicated that it had completed an investigation and updated the tradeline to reflect Plaintiff's reaffirmation and the Account's status as open.

56. Despite Trans Union's response to Plaintiff's dispute, including its assurance that the Account was reporting accurately, Trans Union continued to report the Account as having been included in Plaintiff's bankruptcy.

57. Upon information and belief, Experian and Trans Union did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to State Farm. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian and Trans Union through Plaintiff's reported payment history regarding on the Account, Experian and Trans Union merely parroted information furnished by State Farm despite awareness that the information was factually inaccurate and conflicted with information known by Experian and Trans Union.

58. Upon information and belief, State Farm failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from the CRAs. State Farm failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, State Farm continued to furnish inaccurate data

to the CRA Defendants despite knowledge of Plaintiff's dispute and otherwise possessing information from which Ford should have reported accurate information about the Account.

59. As a result of Defendants' conduct, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities (including sleepless nights), as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

60. Upon information and belief, had Defendants accurately reported the Account as a positive account with a positive payment history, Plaintiff's credit score and credit worthiness would have been better.

61. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

62. Upon information and belief Plaintiff applied for multiple credit opportunities and was approved at less favorable terms due to Defendants' inaccurate reporting, which was published to the creditors in their review of Plaintiff's application.

63. Upon information and belief Plaintiff applied for multiple credit opportunities and was denied credit due to Defendants' inaccurate reporting, which was published to the creditors in their review of Plaintiff's application.

## COUNT I
### Experian, Equifax, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 et seq)

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. The FCRA requires credit reporting agencies, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

66. Defendant CRAs violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably available to Defendants.

67. Defendant CRAs knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of debts during and after bankruptcy, including reaffirmed debts.

68. Upon information and belief, Defendant CRAs regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

69. Upon information and belief, Defendant CRAs voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy.

70. The diligence Defendant CRAs exercise in recording consumer bankruptcy filings is not replicated in their reporting of the effect of bankruptcy proceedings and orders upon certain accounts, including, the status of accounts that are reaffirmed, despite Defendants' knowledge thereof.

71. Consequently, Defendant CRAs routinely reports inaccurate, incomplete, outdated, and materially misleading information about consumers like Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

72. Defendant CRAs therefore negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to Plaintiff.

73. Defendant CRAs inaccurately reported Plaintiff's reaffirmed Account as included in Plaintiff's bankruptcy when Plaintiff continued to make timely payments on the Account, and remained liable for the Account, which was excluded from his discharge.

74. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, emotional and mental pain and

anguish, and a decreased credit score. Moreover, the inaccurate reporting of the Account has deprived Plaintiff of credit opportunities and resulted in credit denials.

75. Even after Plaintiff notified Defendant CRAs of the inaccurate information it included in Plaintiff's credit file, they continued to inaccurately report the reaffirmed Account as "included in bankruptcy."

76. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

77. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

78. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

79. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as required by 15 U.S.C. § 1681e(b), Defendant CRAs additionally violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account

14

even after Plaintiff notified Defendant of the inaccurate information reported in Plaintiff's credit file.

80. Defendant CRAs violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

    iii. Failing to include all relevant information when notifying SFCU of Plaintiff's dispute.

81. Upon information and belief, instead of reasonably reinvestigating Plaintiff's dispute, Equifax simply ignored the dispute and continued to report the reaffirmed Account as "included in bankruptcy."

82. Despite Experian and Trans Union indicating to Plaintiff that it corrected the Account to accurately reflect the reaffirmation and open status, Experian and Trans Union continued to report the Account as closed, having been included in Plaintiff's bankruptcy.

83. Defendant CRAs' acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

84. As a result of the foregoing violations of the FCRA, Defendant CRAs are liable to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

## COUNT II
## Defendant State Farm
## (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

85. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

86. The FCRA requires that furnishers of information like State Farm to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

87. State Farm knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. State Farm obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, State Farm acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

88. Plaintiff disputed the State Farm tradeline through all three national CRAs: Defendants Experian, Equifax, and Trans Union.

89. Thereafter, the credit reporting agencies forwarded Plaintiff's dispute to State Farm, notifying State Farm that Plaintiff was disputing the information it had furnished about the Account.

90. State Farm received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

91. State Farm continues to furnish inaccurate information about Plaintiff to all three CRAs, even though State Farm possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

92. The inaccurate State Farm account materially and adversely affects Plaintiff's credit standing.

93. On at least one occasion within the past two years, by example only and without limitations, Defendant State Farm violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Equifax and Trans Union.

94. State Farm violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed

17

information is indeed inaccurate;

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

95. State Farm unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

96. State Farm is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

97. Consequently, State Farm is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff RayShawn Williams respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 5th day of March 2021.

>  */s/Jenna Dakroub*
> Jenna Dakroub, Bar Number: 385021
> PRICE LAW GROUP, APC
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> E: jenna@pricelawgroup.com
> T: (818) 600-5513
> F: (818) 600-5413
> *Attorney for Plaintiff,*
> *RayShawn Williams*